804 So.2d 1206 (2001)
AMENDMENT TO THE RULES OF JUVENILE PROCEDURE, FLA. R. JUV. P. 8.350.
No. SC00-2044.
Supreme Court of Florida.
October 25, 2001.
Honorable John M. Alexander, Chair, Juvenile Court Rules Committee, St. Augustine, FL, and John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, FL; Teresa A. Kramer, Assistant General Counsel, Department of Children and Families, Tallahassee, FL; and Deborah Anne Schroth, Florida Legal Services, Inc., the Minority Report of the Juvenile Court Rules Committee, Jacksonville, FL, for Petitioner.
Christina A. Zawisza and John M. Ratliff, Children First Project, Nova Southeastern University, Fort Lauderdale, FL; Carolyn S. Salisbury and Bernard P. Perlmutter, Children & Youth Law Clinic, University of Miami School of Law, Coral Gables, FL; Professor Susan Stefan, University of Miami School of Law, Coral Gables, FL, and Ira A. Burnim, Bazelon Center for Mental Health Law, Washington, DC; Howard H. Babb, Jr., Public Defender, President, Florida Public Defender Association, Tavares, FL, and Ward L. Metzger, Assistant Public Defender, Jacksonville, FL; Deborah Anne Schroth, Jacksonville, FL, and Sarah Harriet Bohr, Atlantic Beach, FL, Public Interest Law Section of The Florida Bar; Karen Gievers, Children's Advocacy Foundation, Tallahassee, FL; Professor Bruce J. Winick, University of Miami School of Law, Coral Gables, FL, and Judge Ginger Lerner Wren, 17th Judicial Circuit (Broward County), Fort Lauderdale, FL; and Brent R. Taylor, Advocacy Center for Persons with Disabilities, Inc., Tallahassee, FL, Responding.
PARIENTE, J.
The Florida Bar's Juvenile Court Rules Committee has submitted a petition to this Court proposing new rule 8.350 of the Florida Rules of Juvenile Procedure, entitled "Placement of Child Into Residential Treatment Center After Adjudication of Dependency." We have jurisdiction. See art. V, § 2(a), Fla. Const.
The Committee submitted this petition pursuant to this Court's direction in M.W. v. Davis, 756 So.2d 90, 109 (Fla.2000), wherein this Court stated that
the procedures that the dependency court must follow before residential treatment is ordered should be clearly set forth for the guidance of dependency court judges, the Department and the parties to the dependency proceeding. As stated above, at a minimum, these procedures should include a hearing in which the child has a meaningful opportunity to be heard. Accordingly, we direct that the Juvenile Court Rules Committee submit to this Court no later than *1207 June 30, 2000, proposed rules that will set forth the procedures to be followed by the dependency court when the Department of Children and Families seeks an order committing a dependent child to a residential facility for mental health treatment. The Committee shall give due regard to both the rights of the child and the child's best interests. We urge the Committee to look at proposed rules filed by the Guardian Ad Litem amicus in this case, the rules in other states and in particular New Jersey's procedural rules addressing this issue. In light of the disagreement as to what procedures should be followed when the case plan is amended, we further request that the Juvenile Court Rules Committee review rule 8.410(c), governing the amendment of case plans, to determine if clarification is required.
(Emphasis supplied) (footnote omitted).
Shortly after this Court released M.W., the Florida Legislature amended section 39.407, Florida Statutes (1999), entitled "Medical, psychiatric, and psychological examination of treatment of child; physical or mental examination of parent or person requesting custody of child."[1] The amendment added new subsection (5) to the statute, which listed the procedures Department of Children and Families ("Department") must follow in order to place a child who is under the legal custody of the Department in a residential treatment center. The Court sent a subsequent letter to the Committee asking that it consider the new legislation in drafting the proposed rule. After the Committee submitted its proposed rule, the Court ordered publication of the rule in the November 1, 2000, edition of The Florida Bar News. The Court received eight comments.[2]
Proposed rule 8.350 provides for notification to the dependency court and all parties within seventy-two hours of the child's placement in a residential mental health facility. If a guardian ad litem ("GAL") has not been appointed in the case, the court will appoint one at that time. Under rule 8.350, the GAL must be represented by an attorney unless the GAL is acting as an attorney. On the other hand, the proposed rule provides discretion to the court in determining whether to appoint counsel for the child without providing guidance as to when that discretion should be exercised. The first hearing under the rule would take place within five days of the court receiving notice of placement and is a status conference at which the child is not required to be present.[3] Although the rule provides *1208 for periodic review after placement, the proposed rule does not contemplate and indeed assumes that there will be no precommitment hearing.
Two issues generated the most debate both within the Committee and also in the comments received by the Court regarding the proposed rule: (1) whether appointment of an attorney should be required for every dependent child recommended for placement in a residential mental health facility; and (2) whether a court hearing should be required before the placement of a dependent child in a residential mental health treatment facility. Although the proposed rule was approved by a two-thirds majority, the Committee felt that one issue, the appointment of legal counsel for the child, generated close and conflicting votes sufficient to justify a minority report. Before addressing these issues, we first review the M.W. opinion that precipitated this Court's concerns.

M.W. v. DAVIS
In M.W., the issue before the Court was whether an evidentiary hearing that complied with the substantive and procedural requirements of the Baker Act was required before a court could order a dependent child in the temporary legal custody of the Department to be placed into residential treatment. M.W., 756 So.2d at 92. In M.W., the child was represented by an attorney appointed by the court; thus, the issue of whether an attorney must be appointed in order to provide the child a meaningful opportunity to be heard was not an issue before this Court. Although the evidentiary hearing in M.W. took place after M.W. was placed in residential treatment, the delay was due to the trial court's scheduling conflicts and there were several non-evidentiary hearings before the trial court approved the placement. See id. at 94-95. In addition, the Department agreed with M.W.'s request for a pre-commitment evidentiary hearing to determine the appropriate placement. See id. at 93.
Although we concluded that an evidentiary hearing that complied with the Baker Act was not required, we emphasized that our decision "should not be construed as precedent for allowing a several-week delay in holding an evidentiary hearing regarding the placement of a dependent child into a residential mental health treatment facility." Id. at 109. We recognized the burden already placed on the dependency court judges, but we also explained that
we cannot eschew the necessity for a hearing before a dependent child is placed in residential treatment against his wishes simply because other statutorily mandated hearings are already required or because it would otherwise burden our dependency courts.
Id. at 109 (emphasis added). In making the referral to the Committee, we elaborated on certain guiding principles:
While the child's best interests may in fact be paramount in the eyes, minds and hearts of every participant in the dependency proceeding, it is important that our procedures in dependency cases ensure that each child is treated with the dignity to which every participant in a dependency proceeding should be entitled. It is true that the dependency court, a citizen review panel, the Department and multiple psychiatrists and psychologists were involved in M.W.'s case and all were concerned with his best interests. However, of paramount concern is the question of whether M.W. perceived that anyone had his best interests at heart when he was placed against his wishes in a locked psychiatric facility without the opportunity to be heard.
Indeed, the issue presented by this case extends beyond the legal question of what process is due; rather, this case *1209 also presents the question of whether a child believes that he or she is being listened to and that his or her opinion is respected and counts. See generally Gary B. Melton, et al., No Place to Go: The Civil Commitment of Minors 146-47 (1998) (stating that children obtain psychological benefit from procedural protections prior to being placed in psychiatric treatment facilities)....
Id. at 107-08. With this in mind, we now turn to the two major concerns raised by the proposed rule as set forth in the minority report and the comments we received.

APPOINTMENT OF ATTORNEY
As to the issue of counsel for the child, a majority of the Committee concluded that an attorney was not required for every dependent child recommended for placement in a residential mental health facility; rather, the decision as to whether to appoint counsel for the child would lie within the dependency court's discretion. In support of its conclusion, the Committee looked to language in M.W. indicating that a child can be heard either through a GAL, an attorney, or both.[4] The Committee also considered that, although the Legislature mandated a GAL for all children placed in residential health treatment programs, it did not mandate an attorney. See generally § 39.407(5)(a), Fla. Stat. (2000).
In objecting to the discretionary appointment of counsel to the dependent child, the minority report argues that giving a dependent child a meaningful opportunity to be heard is the hallmark of procedural due process. Therefore, the minority report concludes that any rules governing that child's opportunity to be heard are within the purview of what the Committee may properly recommend to this Court.
The minority report also expresses the view that a dependent child must have an attorney who can advocate the child's position before the court. The report notes that a dependent child's attorney would owe the same duties of undivided loyalty, confidentiality, and competent representation to a child as is due to an adult client. Such advocacy, the minority report states, cannot be provided by the GAL or the GAL's attorney. If the child's position conflicts with that of the GAL, the GAL's attorney will be prohibited ethically from representing the child's interests, which will then result in counsel's failure to advise the court of the child's stated wishes. The minority report concludes that only an attorney for the child can properly give the child an opportunity to be heard.
The minority's view and concerns are echoed by virtually every comment filed with the Court. These comments encompass two major themes. First, they contend that without an attorney, a child will not have a meaningful opportunity to be heard and present evidence. The comments addressing this theme assert that only the dependent child's own attorney can give meaning to the child's right to be heard by allowing the child to actively participate in such procedures as negotiating alternatives with the GAL and the Department. The University of Miami Children & Youth Law Clinic asserts that *1210 "[c]ertainly, a dependent child cannot be expected to represent himself pro se and present evidence in his own behalf and cross-examine witnesses in any meaningful orderly manner."
Further, only counsel appointed to represent the child will have an attorneyclient privileged relationship with the child; neither the GAL nor the GAL's attorney maintains such a privilege with the child. Related to this issue, the Florida Public Defender Association advances the argument that there are due process concerns with not appointing an attorney for a child when that child is committed against his or her wishes:
It is the liberty interest of any child for whom involuntary commitment is sought and the "massive curtailment" of liberty that firmly roots the substantive right to counsel in the federal and state constitutions....
... [T]his Court has already determined the constitutional existence of the right to the assistance of counsel for adults facing involuntary civil commitment. There is simply no meaningful distinction between adults for whom the state seeks involuntary commitment and children for whom the state, through the department, seeks similar commitment.
(Citation omitted.)
A further issue brought to light by the comments regarding the lack of mandatory counsel for the child centers around a pragmatic concern arising from the portion of the rule stating that "[n]o hearing shall proceed without the presence of the child's guardian ad litem and/or attorney." According to the Florida Public Defender Association, if the court is not required to appoint an attorney for the child and a GAL is not available, the nonconsenting child will remain in placement with no counsel, no hearing, no access to the court, and no timely review of the initial placement.
It is also asserted that should the GAL and his or her counsel advocate for continued residential placement of the child, there will be no one to argue the child's position, especially because under the proposed rule the child will not be present at the five-day status hearing. Thus, if the GAL and the Department agree as to placement, there is no need for either to move for a placement review. Moreover, if the court further determines that the child's presence is not in his or her best interest and the child is not represented, absolutely no one will advocate for the child's position.
The Children's Advocacy Foundation asserts that it is essential for the protection of the rights of the child in the foster care system to have both a GAL and an attorney ad litem because each of these individuals serves separate purposes in advocating for the child and insisting upon the Department's proper performance of its duties: "[T]he guardian ad litem can ... be involved ... as a stable constant adult in the child's life and may, in fact, be the only constant as a child's years in foster care drag on.... However, attorneys serve the essential role of advocating in court so that the child is represented by an attorney as are all of the other parties."
The second major theme raised by the comments is that of therapeutic jurisprudence. According to the comment filed by Judge Ginger Wren and Professor Bruce Winick, "Therapeutic jurisprudence is an interdisciplinary field of legal scholarship and approach to law reform that focuses attention upon law's impact on the mental health and psychological functioning of those it affects." According to Judge Wren and Professor Winick, the dependent child's perception as to whether he or she is being listened to and whether his or *1211 her opinion is respected and counted is integral to the child's behavioral and psychological progress. Their comment also explains that feelings of voluntariness rather than coercion in children facing placement tend to produce more effective behavior. Thus, Judge Wren and Professor Winick contend that "[e]ven when the result of a hearing is adverse, people treated fairly, in good faith and with respect are more satisfied with the result and comply more readily with the outcome of the hearing." As such, a child who feels that he or she has been treated fairly in the course of the commitment proceedings will likely be more willing to accept hospitalization and treatment.
The comment further asserts that juveniles involved in civil commitment hearings are likely to be particularly sensitive to issues of participation, dignity and trust. According to Judge Wren and Professor Winick, "[c]ivil commitment hearings for juveniles that deny them the ability to articulate their wishes through counsel, but which solely use guardians ad litem to present the guardian's views of the juvenile's best interests, will not fulfill the juvenile's participatory or dignitary interests."

PRE-COMMITMENT HEARING
In M.W., all parties to the case had agreed that a preplacement hearing was necessary. However, due to the factual circumstances in that case, a hearing did not take place before the child had been committed to the locked residential treatment center.
Despite the directives in M.W., the Committee determined that in light of the legislation passed subsequent to M.W., a preplacement hearing is not required. The Committee points out that Senate Bill 682 (2000), the enacting legislation for section 39.407(5), originally required a preplacement hearing. However, the Legislature affirmatively removed this requirement and replaced it with an extensive process of post-placement evaluations and placement reviews. The Committee notes that these statutory procedures offer due process safeguards similar to those required by the United States Supreme Court in Parham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). The Committee explains that the rule provides the following additional procedures: (1) mandating a status hearing within five days of the placement; and (2) affording any party to the dependency proceeding, including the child, the ability to request a placement review hearing.
The Bazelon Center for Mental Health Law ("Bazelon") and Professor Susan Stefan, in arguing against adoption of the proposed rule, demonstrate how, under the proposed rule, a child can remain in residential treatment for over one month before any court addresses the propriety of the placement:
The placement hearing may take place as late as 14 days after the guardian ad litem's report, which itself is due 14 days after placement.
Although the proposed rule is silent as to whether these time periods include weekends and holidays, Rule of Juvenile Procedure 8.240(a)(2000) suggest that Saturdays, Sundays and holidays shall be excluded from the computation of time. Thus, the proposed rule contemplates between 5 and 5½ weeks would pass in a locked psychiatric facility before the child would receive the "meaningful opportunity to be heard" ordered by the court.
(Citations omitted). Bazelon and Professor Stefan further point out that "a child charged with being delinquent cannot be held in detention without a hearing to determine probable cause, and the judge may *1212 not continue the detention for more than 72 hourswith a possible 24 hour extension without a finding of probable cause." Thus, the dependent child has fewer protections than the delinquent child.

ANALYSIS
We reaffirm our statement in M.W. that it is imperative to "recognize the individuality and dignity of the children who find themselves inside the courtroom solely as a result of their parents' abuse or neglect." 756 So.2d at 108. In addition, we make it clear that, in the context of this rules case, we do not address the issue of whether an attorney or a pre-commitment hearing is constitutionally required when a child is being committed to a residential treatment center. However, after considering the numerous comments filed, we have determined that it is preferable for the procedural rule to incorporate a pre-commitment hearing and require the appointment of an attorney for the child if the child objects to placement.
Because this is a substantial change from the Committee's proposed rule, we have determined that it is preferable to publish our proposed substitute rule for additional comment in The Florida Bar News[5] so we can hear from all interested persons prior to making a final decision as to the rule's adoption. In publishing this revised proposed rule for comment, we express no opinion as to its constitutionality.
Appointment of Counsel. As to the issue of appointment of an attorney, our proposed rule makes appointment of counsel mandatory rather than discretionary when the child objects to the placement.[6] In reaching this conclusion, we recognize the strong policy reasons raised by the comments in favor of appointment of an attorney for a dependent child in order to ensure that the child has a meaningful opportunity to be heard (e.g., the importance of an attorney-client privileged relationship between the child and counsel, and the therapeutic benefits that representation would provide to the child). We also anticipate that among the benefits from the attorney's advocacy for the child may be a determination that the child's best interests will in fact be served by an alternative less restrictive placement. This will not only benefit the child but the system.
Pre-Commitment Hearing. This Court has recognized that "children obtain psychological benefit from procedural protections prior to being placed in psychiatric treatment facilities" and that there is a "need for procedural safeguards prior to placing a dependent child in a residential psychiatric treatment facility." M.W., 756 So.2d at 108. Without considering any potential constitutional issues as to whether a hearing is necessary, we believe that a *1213 pre-commitment hearing is definitely desirable and important to the integrity of the process.
In modifying the Committee's proposed rule so as to mandate a preplacement hearing, we highlight our concern that the rule as submitted could have caused an undue delay in an initial hearing for a child who has been placed in residential treatment, as Bazelon and Professor Stefan pointed out in their comment. It is indeed ironic that under the rule as proposed by the Committee, the very situation that we were concerned with in M.W. (i.e., placement of a child in a locked residential treatment facility without a hearing to evaluate the propriety of that placement) would not only be tolerated, but would be approved as part of this Court's rules of procedure.
The Court has reviewed section 39.407(5), and we do not find that incorporating a pre-commitment hearing into a procedural rule would be inconsistent with the statutory scheme.[7] We believe that *1214 the incorporation of such a hearing would not only complement the procedures set out by the Legislature in section 39.407(5), but also would enhance the child's perception that he or she has a voice and that his or her stated interests are being considered in determining whether placement is in the child's best interests and whether the placement is the least restrictive alternative available. Our proposed substitute rule, therefore, mandates a pre-commitment hearing.
The remainder of the rule that we publish essentially parallels the rule submitted by the Committee; however, we make the following additional amendments: First, we have rejected the portion of the rule that excludes the child from the five-day hearing. The Committee provided no explanation why the child facing placement needs to be excluded from the first hearing held in his or her case. In the interest of fairness to the child, we conclude that all children facing placement should be present at the five-day hearing.[8]
Second, in subdivision (a)(8)(A), which provides the factors that the court must consider in determining the propriety of placement, we include, based on the comments received, that the court should consider the child's views towards commitment as an additional factor. In M.W. and in this opinion, we have repeatedly emphasized the importance of the child who is facing placement believing that he or she has a voice and that his or her views matter. Thus, we find it appropriate to expressly list this factor as one that the trial court must consider in determining whether the child should be placed in or remain in a residential treatment facility.
Although all comments regarding the amended rule are welcome, the Court specifically seeks comments regarding the source of funding for attorneys who will *1215 serve as counsel to children facing placement. As to this specific concern, the Children's Advocacy Foundation stated at oral argument that if the Court mandates the appointment of an attorney, there will be pro bono attorneys available to fulfill that need. Although we do not doubt the commitment of attorneys who provide pro bono service in this needed area, we also do not have sufficient information available as to the numbers of attorneys who possess this expertise that would be needed on a yearly basis. We would, however, note that in approximately fifty percent of the dependency cases statewide, the child does not even have GAL representation due to the lack of available individuals to serve as GALs.
Accordingly, we invite comments from all parties, and specifically request the Supreme Court's Children's Court Improvement Committee, the Department of Children and Family Services and the Florida Bar's Commission on the Legal Needs of Children, to provide this Court with data as to the number of attorneys that would be needed each year for this purpose, the associated cost, funding options, and the availability of attorneys to fulfill this need. In addition, to the extent available, this Court would find it helpful to obtain exact statistics not only as to the number of dependent children in residential treatment but their ages at commitment, the length of stay and any other relevant information.
We further request input on the rule from the Juvenile Court Rules Committee and the Conference of Circuit Court Judges. We direct that all interested parties submit comments regarding the rule by January 15, 2002. Our thanks to the Committee and all the individuals who filed comments with this Court, especially those who participated in oral argument. As all of the language is new, we forego the usual underlining and strike-through type format.
It is so ordered.
SHAW, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
HARDING, J., concurs with an opinion, in which SHAW, PARIENTE, and LEWIS, JJ., concur.
WELLS, C.J., dissents with an opinion.
HARDING, J., concurring.
While I share Chief Justice Wells' concerns regarding the process to be followed when adopting a new rule of procedure, I am persuaded that the procedure advocated by the majority is the most expeditious way to resolve the issues raised in this matter. Therefore, I concur with the majority's decision to publish the revised rule and receive additional comments from interested parties prior to adopting the rule.
However, I write separately to express my concern that dependent children who are involuntarily placed in treatment facilities under section 39.407(5) are given less protection than a child civilly committed under the Baker Act. See § 394.467(4), Fla. Stat. (2000) (providing for the appointment of the public defender to represent the person who is the subject of the involuntary commitment petition within one court working day after the filing of the petition). As this Court held in In re Beverly, 342 So.2d 481, 489 (Fla.1977), "[t]he subject of an involuntary civil commitment proceeding has the right to the effective assistance of counsel at all significant stages of the commitment process. By significant stages we mean all judicial proceedings and any other official proceeding at which a decision is, or can be, made which may result in a detrimental change to the conditions of the subject's liberty." (Citation omitted.) See also Lynch v. Baxley, *1216 386 F.Supp. 378, 388 (M.D.Ala.1974) (stating that due process applies to involuntary civil commitments and requires that the person who is the subject of the commitment proceeding be represented by counsel, appointed if necessary). I see no reason why dependent children should be given less procedural protection. Thus, I urge the committee or another interested party to comment on this issue.
SHAW, PARIENTE, and LEWIS, JJ., concur.
WELLS, C.J., dissenting.
I do not agree with the majority's rejection of the Rules of Juvenile Procedure Committee's proposed rule by the majority's drafting of a new rule or with the new rule which has been drafted by the majority. The Committee, composed of individuals who have broad experience in our juvenile courts, adopted the proposed rule by a vote of eighteen to seven. The proposed rule was then sent to the Board of Governors of The Florida Bar, which, because of the time restriction set by this Court in M.W. v. Davis, 756 So.2d 90 (2000), acted on the rule through its executive committee approving the Rules Committee's proposed rule by a vote of eight to three. We then held oral argument and heard from various individuals who had comments to make concerning the proposed rule. At this point, if the Court is not going to adopt the proposed rule, I believe the proper procedure would be to return the rule to the Committee with directions that the concerns which have now been crystalized be considered and this Court be further advised as to whether the Committee concludes that changes in the rule should or should not be made. I believe this procedure is in line with the usual manner in which this Court considers rules and is properly respectful of the role of the Committee.
I do not agree with this Court's casting aside of the rule proposed by the Committee and then simply drafting a rule itself. The problem with this procedure is that it weakens the structure for drafting rules by those who have practical experience in the area of the rule.
The majority has now drafted a rule which is directly contrary to the recommendation of the Committee, and such drafting of a rule by a majority of this Court is a strong indication that what the majority has drafted will be adopted. Not only do I disagree with this procedure, but I also have serious concerns about the practical ramifications of what the majority indicates it will likely do.
In respect to the appointment of an attorney for the child, I conclude that the court cannot mandate counsel by rule. There has not been determined to be a constitutional requirement for counsel for the child. There is no statutory right to counsel for the child. Procedural rules in respect to counsel should be just that procedures for the implementation of substantive rights having either a constitutional base or a statutory creation. It is only in this way that the other fundamental in respect to a requirement for counsel, which is the essential fundamental of funding, has a basis.
To have rule-mandated counsel without a legislative commitment for funding serves only to create confusion. For this Court to offer a proposed rule with a requirement for such an appointment of counsel is to propose a rule which has a provision which cannot become effective and therefore proposes what the Court cannot deliver.
I am concerned that the practical ramifications resulting from the requirements of the majority's rule. I request input from the Conference of Circuit Judges on this *1217 issue. The majority's rule requires the child's presence at the five-day hearing, and the proposed committee rule does not. I request the same input from the circuit judges who preside regularly in these cases before doing what the Committee recommended against.

APPENDIX

RULE 8.350. PLACEMENT OF CHILD INTO RESIDENTIAL TREATMENT CENTER AFTER ADJUDICATION OF DEPENDENCY

(a) Placement.

(1) The placement of any child who has been adjudicated dependent into a residential treatment center licensed under section 394.875, Florida Statutes, or a hospital licensed under chapter 395, Florida Statutes, for residential mental health treatment shall be as provided by law.
(2) Whenever the Department of Children and Families believes that a child in its legal custody may require placement in a long-term residential treatment center or hospital, the department shall arrange to have the child assessed by a qualified evaluator as provided by law and shall file notice of this with the court and all parties. Upon the filing of this notice by the department, the court shall appoint a guardian ad litem for the child, if one has not already been appointed, and may also appoint an attorney for the child. Both the guardian ad litem and attorney, if appointed, shall meet the child and shall have the opportunity to discuss the child's suitability for residential treatment with the qualified evaluator conducting the assessment. Upon the completion of the evaluator's written assessment, the department shall provide a copy to the court and to all parties. The guardian ad litem shall also provide a written report to the court and to all parties indicating the guardian ad litem's recommendation as to the child's placement in residential treatment and the child's wishes.
(3) If the department seeks to place the child in a residential treatment facility, the department shall immediately file a motion for placement of the child with the court. This motion shall include a statement as to why the child is suitable for placement in a residential treatment center and why less restrictive alternatives are not appropriate and also shall include the written findings of the qualified evaluator. The motion shall state whether all parties, including the child, are in agreement.
(4) The guardian ad litem must be represented by an attorney at all proceedings under this rule, unless the guardian ad litem is acting as an attorney. If the department's motion or the guardian ad litem's report indicates that the child is not in agreement, then the court shall appoint an attorney to represent the child, if one has not already been appointed.
(5) Upon the filing of a motion for placement, the court shall set the matter for a status hearing within 5 working days, excluding weekends and holidays. The clerk of court shall timely provide written notice of the date, time, and place of the hearing to all parties and participants.
(6) The child's attorney or guardian ad litem shall notify the child of the date, time and place of the hearing. No hearing shall proceed without the presence of the child's guardian ad litem and attorney.
(7) If all parties are in agreement at the scheduled hearing, then the motion for placement may be approved by the court. However, if any party, including the child, is not in agreement, then the court shall set the matter for hearing within 10 working days. If the evaluator's written assessment indicates that the child requires immediate placement in a long-term residential *1218 treatment center or hospital and that such placement cannot wait for the hearing, then the department may place the child pending the hearing, unless the court orders otherwise.
(8) Hearing on Placement
(A) At the hearing, the court shall consider, at a minimum, all of the following:
(i) based on an independent assessment of the child, the recommendation of a department representative or authorized agent that the residential treatment or hospitalization is in the child's best interest and a showing that the placement is the least restrictive available alternative;
(ii) the recommendation of the guardian ad litem;
(iii) a case review committee recommendation, if there has been one;
(iv) the written findings of the evaluation and suitability assessment prepared by a qualified evaluator; and
(v) the views regarding placement in residential treatment that the child expresses to the court.
(B) All parties shall be permitted to present evidence concerning the suitability of the placement.
(C) If the court determines that the child is not suitable for continued residential treatment, the court shall order the department to place the child in the least restrictive setting that is best suited to meet the child's needs.

(b) Continuing Residential Placement Reviews.

(1) The court shall conduct a hearing to review the status of the child's residential treatment plan no later than 3 months after the child's admission to the residential treatment program. An independent review of the child's progress towards achieving the goals and objectives of the treatment plan must be completed by a qualified evaluator and submitted to the court and all parties in writing at least 72 hours before the 3-month review hearing.
(2) Review hearings shall be conducted every 3 months thereafter, until the child is placed in a less restrictive setting,
(3) If the court determines at any hearing that the child is not suitable for continued residential treatment, the court shall order the department to place the child in the least restrictive setting that is best suited to meet the child's needs.
(c) Presence of Child. The child shall be present at all court hearings unless the court finds that the child's mental or physical condition is such that a court appearance is not in the child's best interest. In such circumstances, the child shall be provided the opportunity to express his or her views to the court by a method deemed appropriate by the court.
NOTES
[1] The Court in M.W. recognized that this legislation was pending and stated that the "amendment of section 39.407 would be an important step in specifying what steps are required to be taken before a child may be placed in residential treatment." 756 So.2d at 107 n. 34.
[2] The following individuals filed comments: (1) Christina A. Zawisza and John M. Ratliff, Children First Project, Nova Southeastern University; (2) Carolyn S. Salisbury and Bernard P. Perlmutter, Children & Youth Law Clinic, University of Miami School of Law; (3) Professor Susan Stefan and Ira A. Burnim, Bazelon Center for Mental Health Law; (4) Howard H. Babb, Jr. and Ward L. Metzger, Florida Public Defender Association; (5) Deborah Anne Schroth and Sarah Harriet Bohr, Public Interest Law Section of The Florida Bar; (6) Karen Gievers, Children's Advocacy Foundation; (7) Professor Bruce J. Winick, University of Miami School of Law, and Judge Ginger Lerner Wren, 17th Judicial Circuit (Broward County); and (8) Brent R. Taylor, Advocacy Center for Persons with Disabilities, Inc.
[3] Because the court must be notified within seventy-two hours of the child's placement, under the timeline set forth in the rule the child may actually be committed for up to eight days before the initial status hearing is held.
[4] Although the Committee does not give a specific cite for this reference, the Committee was apparently referring to the following language from M.W.: "Whether or not an evidentiary hearing is constitutionally mandated, our legal system at the very least should afford the child, through his or her attorney and/or guardian ad litem, a meaningful opportunity to be heard." 756 So.2d at 108. Because an attorney was appointed in M.W., the Court never addressed the issue of whether appointment of an attorney should be mandatory or discretionary.
[5] In amending the rule, we have incorporated sections of the proposed rule submitted by the University of Miami Children and Youth Law Clinic.
[6] With regard to the child's attorney, the Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases, adopted by the American Bar Association in February 1996, specifically state that "to ensure that the child's independent voice is heard, the child's attorney must advocate the child's articulated position." Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases, pt. I, std. A-1 (1996). On the other hand, the ABA Standards provide that an attorney who is appointed as a "guardian ad litem" is "an officer of the court appointed to protect the child's interests without being bound by the child's expressed preferences." Id. at std. 2. These issues are the subject of continued study by the Florida Bar's Commission on the Legal Needs of Children. See The Florida Bar Commission on the Legal Needs of Children Interim Report, March 2001.
[7] Section 39.407(5) sets forth in pertinent part:

(b) Whenever the department believes that a child in its legal custody is emotionally disturbed and may need residential treatment, an examination and suitability assessment must be conducted by a qualified evaluator who is appointed by the Agency for Health Care Administration. This suitability assessment must be completed before the placement of the child in a residential treatment center for emotionally disturbed children and adolescents or a hospital. The qualified evaluator must be a psychiatrist or a psychologist licensed in Florida who has at least 3 years of experience in the diagnosis and treatment of serious emotional disturbances in children and adolescents and who has no actual or perceived conflict of interest with any inpatient facility or residential treatment center or program.
(c) Before a child is admitted under this subsection, the child shall be assessed for suitability for residential treatment by a qualified evaluator who has conducted a personal examination and assessment of the child and has made written findings that:
1. The child appears to have an emotional disturbance serious enough to require residential treatment and is reasonably likely to benefit from the treatment.
2. The child has been provided with a clinically appropriate explanation of the nature and purpose of the treatment.
3. All available modalities of treatment less restrictive than residential treatment have been considered, and a less restrictive alternative that would offer comparable benefits to the child is unavailable.
A copy of the written findings of the evaluation and suitability assessment must be provided to the department and to the guardian ad litem, who shall have the opportunity to discuss the findings with the evaluator.
(d) Immediately upon placing a child in a residential treatment program under this section, the department must notify the guardian ad litem and the court having jurisdiction over the child and must provide the guardian ad litem and the court with a copy of the assessment by the qualified evaluator.
(e) Within 10 days after the admission of a child to a residential treatment program, the director of the residential treatment program or the director's designee must ensure that an individualized plan of treatment has been prepared by the program and has been explained to the child, to the department, and to the guardian ad litem, and submitted to the department. The child must be involved in the preparation of the plan to the maximum feasible extent consistent with his or her ability to understand and participate, and the guardian ad litem and the child's foster parents must be involved to the maximum extent consistent with the child's treatment needs. The plan must include a preliminary plan for residential treatment and aftercare upon completion of residential treatment. The plan must include specific behavioral and emotional goals against which the success of the residential treatment may be measured. A copy of the plan must be provided to the child, to the guardian ad litem, and to the department.
(f) Within 30 days after admission, the residential treatment program must review the appropriateness and suitability of the child's placement in the program. The residential treatment program must determine whether the child is receiving benefit towards the treatment goals and whether the child could be treated in a less restrictive treatment program. The residential treatment program shall prepare a written report of its findings and submit the report to the guardian ad litem and to the department. The department must submit the report to the court. The report must include a discharge plan for the child. The residential treatment program must continue to evaluate the child's treatment progress every 30 days thereafter and must include its findings in a written report submitted to the department. The department may not reimburse a facility until the facility has submitted every written report that is due.
(g)1. The department must submit, at the beginning of each month, to the court having jurisdiction over the child, a written report regarding the child's progress towards achieving the goals specified in the individualized plan of treatment.
2. The court must conduct a hearing to review the status of the child's residential treatment plan no later than 3 months after the child's admission to the residential treatment program. An independent review of the child's progress towards achieving the goals and objectives of the treatment plan must be completed by a qualified evaluator and submitted to the court before its 3 month review.
3. For any child in residential treatment at the time a judicial review is held pursuant to s. 39.701, the child's continued placement in residential treatment must be a subject of the judicial review.
4. If at any time the court determines that the child is. not suitable for continued residential treatment, the court shall order the department to place the child in the least restrictive setting that is best suited to meet his or her needs.
(h) After the initial 3-month review, the court must conduct a review of the child's residential treatment plan every 90 days.
[8] As with all other hearings, the court may exclude the child from this hearing if the court concludes that the child's mental or physical condition is such that a court appearance is not in the child's best interest.