842 So.2d 763 (2003)
AMENDMENT TO THE RULES OF JUVENILE PROCEDURE, FLA. R. JUV. P. 8.350.
No. SC00-2044.
Supreme Court of Florida.
March 6, 2003.
The Honorable Joel M. Silvershein, Chair, Juvenile Court Rules Committee, Fort Lauderdale, FL; the Honorable John M. Alexander, Former Chair, Juvenile Court Rules Committee, St. Augustine, FL, and John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, FL; the Honorable Sandy E. Karlan, Circuit Judge, Chair for the Florida Bar Commission on the Legal Needs of Children, Miami, FL, and Gerard F. Glynn, Associate Professor, Barry University School of Law, Orlando, FL, and Rhoda Smith Kibler, Staff Director, Florida Bar Commission on the Legal Needs of Children, Tallahassee, FL; Teresa A. Kramer, Assistant General Counsel, and Theresa Walsh, Chief Legal Counsel, Department of Children & Families, Tallahassee, FL; Deborah Anne Schroth, Florida Legal Services, Inc., Jacksonville, FL, and Sarah Harriet Bohr of Bohr and Harrington, LLC, Atlantic Beach, FL, for the Public Interest Law Section of The Florida Bar; and Christina A. Zawisza and John M. Ratliff, Children First Project, Nova Southeastern University, Fort Lauderdale, FL, and Stephen F. Hanlon of Holland & Knight LLP, Tallahassee, FL, Petitioner.
The Honorable Joseph P. Farina, Chair, Florida Conference of Circuit Judges, Miami, FL; the Honorable Cindy S. Lederman, Administrative Judge of the Juvenile Division, the Honorable Lester Langer, Associate Administrative Judge of the Juvenile Division, the Honorable Jeri B. Cohen, Circuit Judge, Juvenile Dependency Division, and the Honorable William E. Gladston, Senior Judge, Eleventh Judicial Circuit, Miami, FL; the Honorable Daniel P. Dawson, Chair, Children's Court Improvement Committee, Kissimmee, FL; Linda A. Wells, Florida Department of Children & Families, Tallahassee, FL, and Charles M. Auslander, District Administrator, District 11, Florida Department of Children & Families, Miami, FL; Xavier Cortada of the Voice Project, the University of Miami Children & Youth Law Clinic, Miami, FL; Karen Gievers, Children's Advocacy Foundation, Inc., Tallahassee, FL; *764 Carolyn S. Salisbury and Bernard P. Perlmutter, the University of Miami Children & Youth Law Clinic, Coral Gables, FL; Professor Susan Stefan, University of Miami School of Law, Coral Gables, FL, and Ira A. Burnim, Bazelon Center for Mental Health Law, Washington, DC; and Ward L. Metzger, Appellate Coordinator, Public Defender's Office, Jacksonville, FL, on behalf of Howard H. Babb, Jr., Public Defender, President, Florida Public Defender Association, Tavares, FL; Karen Gievers, Children's Advocacy Foundation, Tallahassee, FL; the Honorable Ronald Alvarez, West Palm Beach, FL, Professor Kathy Cerminara, Nova Southeastern University, Fort Lauderdale, FL, the Honorable D. Bruce Levy, Miami, FL, the Honorable John T. Parnham, Pensacola, FL, Dr. Edward Sczechowicz, Ph.D., Coral Gables, FL, the Honorable Ginger Lerner Wren, Fort Lauderdale, FL, and Professor Bruce J. Winick, University of Miami School of Law, Coral Gables, FL; Brent R. Taylor, Advocacy Center for Persons with Disabilities, Inc., Tallahassee, FL; Nancy Schleifer, a member of The Florida Bar, Coconut Grove, FL; David A. Glant, a member of The Florida Bar, High Springs, FL; Frank A. Kreidler, a member of The Florida Bar, Lake Worth, FL; Walter Honaman, Team Child Project Attorney and David Bazerman Dependency Law Project Director, Legal Aid Service of Broward County, Inc., Fort Lauderdale, FL; Patrick Farrell, Fort Myers, FL; Sari and David Rutt, Fort Myers, FL; Andrew D. Havens, Jr., Fort Myers, FL; and Robert G. Schwartz, Executive Director, Juvenile Law Center, Philadelphia, PA, Responding.
PARIENTE, J.
We consider once again proposed Florida Rule of Juvenile Procedure 8.350, Placement of Child into Residential Treatment Center after Adjudication of Dependency, submitted to this Court by the Juvenile Court Rules Committee (the committee). See Amendment to the Rules of Juvenile Procedure, Fla. R. Juv. P. 8.350, 804 So.2d 1206 (Fla.2001). We begin by providing the pertinent background.
The process that has lead to our final promulgation of rule of procedure 8.350 began with our consideration of M.W. v. Davis, 756 So.2d 90 (Fla.2000), a case involving the commitment of a dependent child to a locked residential mental health treatment facility against the child's wishes. In M.W., this Court considered whether an evidentiary hearing that complied with the substantive and procedural requirements of the Baker Act was required before a court could order a dependent child in the temporary legal custody of the Department of Children and Family Services (the department) to be placed into residential treatment. We ultimately found that an evidentiary hearing that complied with the Baker Act was not required, see id. at 106, but stated:
[T]he procedures that the dependency court must follow before residential treatment is ordered should be clearly set forth for the guidance of dependency court judges, the Department and the parties to the dependency proceeding. As stated above, at a minimum, these procedures should include a hearing in which the child has a meaningful opportunity to be heard. Accordingly, we direct that the Juvenile Court Rules Committee submit to this Court no later than June 30, 2000, proposed rules that will set forth the procedures to be followed by the dependency court when the Department of Children and Families seeks an order committing a dependent child to a residential facility for mental health treatment. The Committee shall give *765 due regard to both the rights of the child and the child's best interests.
Id. at 109 (emphasis supplied).
The committee subsequently submitted proposed rule 8.350 to this Court. The committee's rule provided for notification to the dependency court and all parties within seventy-two hours of the child's placement in a residential mental health facility. Regarding appointment of counsel, the rule provided discretion to the court in determining whether to appoint counsel for the child. The proposed rule provided for the first hearing to take place within five days of the court receiving notice of placement, and it constituted a status conference at which the child was not required to be present. A minority of the committee disagreed with the committee's proposed rule and submitted a minority report detailing the reasons why the appointment of an attorney should not be discretionary and pointing out other concerns with the rule.
In Amendment to the Rules of Juvenile Procedure, Fla. R. Juv. P. 8.350, 804 So.2d 1206 (Fla.2001), this Court published a modified rule that differed from the committee's proposed rule in two ways. First, the Court's rule mandated the appointment of counsel when the child objected to placement in a residential mental health treatment facility. See id. at 1212. In deciding to make counsel mandatory when the child objected to placement, the Court stated:
[W]e recognize the strong policy reasons raised by the comments in favor of appointment of an attorney for a dependent child in order to ensure that the child has a meaningful opportunity to be heard (e.g., the importance of an attorney-client privileged relationship between the child and counsel, and the therapeutic benefits that representation would provide to the child). We also anticipate that among the benefits from the attorney's advocacy for the child may be a determination that the child's best interests will in fact be served by an alternative less restrictive placement. This will not only benefit the child but the system.
Id. The second difference between the committee's rule and the Court's proposed rule is that the Court's rule incorporated a precommitment hearing. See id. at 1213. The Court noted that a precommitment hearing would "enhance the child's perception that he or she has a voice and that his or her stated interests are being considered in determining whether placement is in the child's best interests and whether the placement is the least restrictive alternative available." Id. at 1214. In proposing these changes, we noted that incorporating counsel and a precommitment hearing into the proceedings would not be inconsistent with section 39.407(5), Florida Statutes (2001), which lists the procedures the department must follow in order to place a child who is under the legal custody of the department in a residential treatment center. We concluded that these additional safeguards would "complement the procedures set out by the Legislature." Id.
Due to the changes to the committee's proposed rule, this Court "determined that it is preferable to publish [the] proposed substitute rule for additional comment in The Florida Bar News so [the Court] can hear from all interested persons prior to making a final decision as to the rule's adoption." Id. at 1212 (footnote omitted). After the Court published its proposed rule for comment, the committee reported back to this Court, providing comments and suggesting revisions to the Court's proposed rule. We received comments and heard from all interested persons in oral argument.
*766 After reviewing the committee's proposed revisions, considering the comments to this Court's proposed rule and to the revisions proposed by the committee, and hearing oral argument, we adopt rule 8.350 and approve all of the committee's changes to the Court's proposed rule. We further add an additional subdivision to the rule, rule 8.350(a)(10), as discussed below.
We start our analysis by observing that all who commented in the instant proceedings and appeared at oral argument undoubtedly care about and want what is best for Florida's children. We commend each commentator for actively and vocally advocating for what he or she believed would best serve and protect dependent children who face placement in a residential mental health treatment facility.
Having carefully considered the arguments in support of and against the rule as proposed by this Court, we conclude that a rule governing the involuntary placement of children in residential treatment should incorporate both a precommitment hearing and appointment of counsel for a child when that child objects to residential placement.[1]
Rule 8.350 will standardize the procedures to be followed by trial courts before a child is placed against his or her will in a residential treatment facility.[2] The adoption of this rule is necessary to implement our conclusion in M.W. that the commitment process must afford due regard to both the rights of the child and the child's best interests. See M.W., 756 So.2d at 109. Further, these additional procedures are safeguards that will provide the child with the "meaningful opportunity to be heard," which we concluded in M.W., 756 So.2d at 108, was the minimum required to comply with due process and to ensure that commitment to a residential facility is the least restrictive treatment alternative for the child.
Our decision to adopt a rule that requires the appointment of counsel when the child objects to placement is consistent with the recommendations made in the final report of The Florida Bar's Commission on the Legal Needs of Children (the commission), which studied issues relating to the representation of children over a three-year period. In its report, issued in June 2002, the commission recommended that counsel be mandatory for children in cases where the State seeks commitment of dependent children to residential mental health treatment facilities.
The greatest concern expressed by commentators opposed to the appointment of counsel and a precommitment hearing is that there will not be enough attorneys available to represent dependent children who object to placement. These commentators fear that children who are in dire need of residential treatment will suffer while the court spends days or even weeks searching for an attorney to represent these children. We conclude that this fear is unfounded.
The children the department seeks to commit to a residential facility constitute a small percentage of the total number of dependent children. The department's February 15, 2002, response to this Court's request for information, indicates *767 that 392 and 518 dependent children were placed in residential treatment during fiscal years 1999-2000 and 2000-2001, respectively.[3] Some of these children had attorneys appointed by the trial court to represent them, as did the child in M.W.
Further, there are multiple sources of experienced attorneys that can be tapped by judges to represent children in rule 8.350 proceedings. First, there are legal services and legal programs throughout the State that could provide representation to children. Second, there are also five law schools in the state that run clinical programs specializing in advocacy for children. Graduates of these clinical programs have had extensive training in children's law and are located throughout the State. In addition, the Florida Bar Commission on the Legal Needs of Children submitted an appendix with its comments demonstrating that there are attorneys with dependency training and experience in each of the department's districts. Attorneys who have filed comments indicate that there is a source of attorneys throughout the State who, if necessary, are available to provide representation on a pro bono basis. Although pro bono representation should be the exception, not the rule, when it comes to representation of children, we note that Florida's Rules of Professional Conduct expressly state that attorneys in good standing with the Bar have a professional responsibility to render legal services to the poor. See R. Regulating Fla. Bar 4-6.1. We are aware that some attorneys seeking to reach the aspirational twenty-hour goal of pro bono legal service accomplish this goal by representing children in dependency proceedings.
Finally, regarding potential sources of funding, several commentators pointed out that during the 2002 legislative session the Florida Legislature appropriated, and Governor Bush approved, $7.5 million to Guardian Ad Litem programs for representation of children in chapter 39 proceedings. See Ch. 2002-394, § 7, at 4613-15, Laws of Fla.[4] Chapter 39 governs proceedings related to children and section 39.407(5) specifically governs proceedings related to the placement of dependent children into residential treatment facilities. Thus, it is possible that a portion of the funding appropriated by the Legislature and approved by Governor Bush could be used as a source to pay those attorneys who are appointed to represent dependent *768 children in rule 8.350 proceedings as mandated by this rule.
In light of the foregoing, we do not believe that there will be a shortage of attorneys who are experienced and willing to represent dependent children. However, even if the worst-case scenario of an attorney not being available to represent a dependent child arises, the proposed rule has an express exception, which provides that if the child's condition is so severe that he or she will be harmed by waiting for a placement hearing, the court may order placement immediately. See Fla. R. Juv. P. 8.350(a)(5). Thus, the child's mental health is not compromised under the rule.
Further, we have added an additional procedural precaution through subdivision (a)(10). This subdivision allows the court to hold a precommitment hearing in the absence of counsel for the child when the trial court determines that counsel for the child is not immediately available and the trial court determines that the child will be harmed if the hearing is postponed. However, if the court determines that a hearing is necessary under this subdivision, the child must be present at the hearing and the court must afford the child an opportunity to be heard (unless the court determines that the child's mental or physical condition is such that a court appearance is not in the child's best interest). Affording the child the opportunity to speak in the absence of counsel will serve the aforementioned goals of providing the court with the maximum information possible and the child with the assurance that he or she is being listened to and that his or her opinion counts. The proposed rule provides that, even if counsel is not available at the time of the hearing, counsel should be appointed as soon as practical thereafter with a provision for an additional hearing.
Accordingly, we adopt new Rule of Juvenile Procedure 8.350 as reflected in the appendix to this opinion. We thank the committee and all the individuals who filed comments with this Court. The new rule shall become effective immediately. In adopting this rule, we express no opinion as to its constitutionality. As all of the language is new, we forego the usual underlining and strike-through type format.
It is so ordered.
ANSTEAD, C.J., LEWIS and QUINCE, JJ., and SHAW, Senior Justice, concur.
HARDING, Senior Justice, concurs in part and dissents in part with an opinion.
WELLS, J., dissents with an opinion.
HARDING, Senior Justice, concurring in part and dissenting in part.
I concur in the adoption of the provisions of new Florida Rule of Juvenile Procedure 8.350, with one exception. In my earlier concurring opinion in this case, I expressed concern that dependent children who are involuntarily placed in treatment facilities under section 39.407(5), Florida Statutes (2002), are given less protection than children who are civilly committed under the Baker Act.[5]See Amendment to Rules of Juv. Procedure, 804 So.2d 1206, 1215 (Fla.2001) (Harding, J., concurring). While the Baker Act requires appointment of a public defender to represent a person who is the subject of an involuntary commitment petition, see § 394.467(4), Fla. Stat. (2002), there is no provision in section 39.407(5) for appointment of counsel. I urged the committee and any other interested parties to comment on this disparity.
*769 The comments received and the majority opinion here take the position that appointing counsel for dependent children facing involuntary commitment is a good idea to ensure that a dependent child has adequate protection and to ensure that the child feels that he or she is being listened to and is being treated fairly. While I agree with this position, the majority sets forth no constitutional or statutory basis for requiring that counsel be appointed. Absent reliance upon such a basis, I do not think this Court has the authority, by rule, to require trial judges to appoint counsel for dependent children facing commitment to treatment facilities. Cf. State v. Garcia, 229 So.2d 236, 238 (Fla.1969) ("The rules adopted by the Supreme Court are limited to matters of procedure, for a rule cannot abrogate or modify substantive law.").
In addition, there are no statutory provisions for compensation of counsel appointed pursuant to the rule adopted by the majority. While section 39.0134, Florida Statutes (2002), provides that counties are to pay for court-appointed counsel for dependent children, this section applies only to counsel entitled to compensation "pursuant to a court appointment in a dependency proceeding pursuant to this chapter." § 39.0134(1), Fla. Stat. (2002). The precommitment hearing required by the rule is not a "dependency proceeding" pursuant to chapter 39, Florida Statutes (2002), nor could a court appointment pursuant to the rule be considered a court appointment pursuant to chapter 39. Thus, this section does not apply.
Nor does there appear to be any other applicable statutory provision for compensation of attorneys appointed pursuant to the rule adopted by the majority. Section 29.001, Florida Statutes (2002), which requires counties to fund the costs of court-appointed counsel, expressly defines court-appointed counsel as "counsel appointed to ensure due process in criminal and civil proceedings in accordance with state and federal constitutional guarantees." § 29.001(1), Fla. Stat. (2002). As noted above, the majority has identified no constitutional basis for mandating counsel in these cases; thus, this section does not apply. Nor would section 925.036, Florida Statutes (2002), apply, as it provides compensation only for counsel appointed in death cases and as special assistant public defenders.
Accordingly, I urge the Legislature to consider and rectify the disparity in statutory protections afforded to dependent children facing involuntary commitment under section 39.407(5) and children civilly committed under the Baker Act by amending section 39.407(5) to provide for the appointment and compensation of counsel. Until such time, I simply do not believe this Court can, by rule, require the appointment of counsel in these cases.
WELLS, J., dissenting.
I continue to dissent to the adoption of this rule for the same reasons expressed in my dissent in Amendment to the Rules of Juvenile Procedure, Fla. R. Juv. P. 8.350, 804 So.2d 1206 (Fla.2001).
The majority has now adopted a rule, which in material part was rejected by a vote of eighteen to seven by the committee which had the responsibility to first review this rule. As I stated in my earlier opinion, I have serious concerns about the practical ramifications of the rule that the majority now adopts in respect to the court-mandated counsel. I know of no authority for this Court to mandate the appointment of counsel by rule when there is no constitutional or statutory requirement for counsel. The majority has no evidentiary support for its statement, "There are multiple sources of experienced attorneys that can be tapped by judges to *770 represent children in rule 8.350 proceedings." Majority op. at 767. Nor does the majority have any sources of funds to pay such attorneys. Clearly, money appropriated by the Legislature for the guardian ad litem program cannot be properly redirected from that program without legislative approval.
I am concerned that this rule will be an overwhelming and frustrating burden for the dependency court judges, who will have an ongoing responsibility to search for attorneys in order to comply with this rule. A comparable situation was in the early 1980s when this Court attempted to find counsel for defendants in postconviction capital cases by recruiting a group of pro bono lawyers to perform these services. That became a great burden for the Court and the Bar, and frustrated the process due to the failure to obtain qualified counsel for all of those defendants through such a program.
I believe the lesson from that experience was that the only effective way that counsel can be made available is through the cooperation of the legislative and executive branches of state government for these types of situations. To date, neither of the other branches have been convinced of the need for such counsel.
Furthermore, I do not believe that mandating attorneys and then providing exceptions, as the majority's rule does, is an acceptable procedure. Such an exception will be the subject of substantial litigation when a court proceeds under it, since this Court has now adopted a judicially created right to counsel.
Finally, as apparently the legislative and executive branches do, I have a continuing real question as to the need for this additional lawyer. There will now be a mandated court procedure in which the child has a lawyer, the guardian ad litem has a lawyer, the parents have a lawyer (often each parent has a lawyer), and the Department of Children and Families has a lawyerin a situation which is intended to be nonadversarial. That does not seem to me the way this should work.

APPENDIX
RULE 8.350. PLACEMENT OF CHILD INTO RESIDENTIAL TREATMENT CENTER AFTER ADJUDICATION OF DEPENDENCY

(a) Placement.
(1) Any reference in this rule to a residential treatment center is to a residential treatment center or facility licensed under section 394.875, Florida Statutes, for residential mental health treatment. Any reference to hospital is to a hospital licensed under chapter 395, Florida Statutes, for residential mental health treatment. This rule does not apply to placement under sections 394.463 or 394.467, Florida Statutes.
(2) The placement of any child who has been adjudicated dependent for residential mental health treatment shall be as provided by law.
(3) Whenever the department believes that a child in its legal custody may require placement in a residential treatment center or hospital, the department shall arrange to have the child assessed by a qualified evaluator as provided by law and shall file notice of this with the court and all parties. Upon the filing of this notice by the department, the court shall appoint a guardian ad litem for the child, if one has not already been appointed, and may also appoint an attorney for the child. Both the guardian ad litem and attorney, if appointed, shall meet the child and shall have the opportunity to discuss the child's suitability for residential treatment with the *771 qualified evaluator conducting the assessment. Upon the completion of the evaluator's written assessment, the department shall provide a copy to the court and to all parties. The guardian ad litem shall also provide a written report to the court and to all parties indicating the guardian ad litem's recommendation as to the child's placement in residential treatment and the child's wishes.
(4) If the department seeks to place the child in a residential treatment center or hospital, the department shall immediately file a motion for placement of the child with the court. This motion shall include a statement as to why the child is suitable for this placement and why less restrictive alternatives are not appropriate and also shall include the written findings of the qualified evaluator. The motion shall state whether all parties, including the child, are in agreement.
(5) If the evaluator's written assessment indicates that the child requires immediate placement in a residential treatment center or hospital and that such placement cannot wait for a hearing, then the department may place the child pending a hearing, unless the court orders otherwise.
(6) The guardian ad litem must be represented by an attorney at all proceedings under this rule, unless the guardian ad litem is acting as an attorney. If the department's motion, the guardian ad litem's report, or another party based on communication with the child indicates that the child does not agree with the department's motion, then the court shall appoint an attorney to represent the child, if one has not already been appointed.
(7) Upon the filing of a motion for placement, the court shall set the matter for a status hearing within 48 hours, excluding weekends and holidays. The department shall timely provide notice of the date, time, and place of the hearing to all parties and participants.
(8) The child's attorney or guardian ad litem shall notify the child of the date, time, and place of the hearing. No hearing shall proceed without the presence of the child's guardian ad litem and attorney, unless excused by the court for good cause shown. Should the hearing occur in the absence of the guardian ad litem and attorney, upon request the court shall set the matter for an additional hearing within 24 hours, at which time the attorney and guardian ad litem shall be present.
(9) If the child appears at the status hearing not represented by an attorney, the court shall directly inquire of the child whether he or she disagrees with the motion for placement. If the child does not appear and is not represented by an attorney at the status hearing, the court shall diligently pursue all available information to determine if the child disagrees with the department's motion for placement. If no party disagrees with the department's motion at the status hearing, then the motion for placement may be approved by the court. However, if any party, including the child, disagrees, then the court shall set the matter for hearing within 10 working days.
(10) If counsel is not immediately available to represent the child, and the court determines that the child will be harmed if the hearing on placement is postponed, then the hearing may be held in the absence of counsel. The child shall be present at the hearing unless the court determines pursuant to subdivision (c) that a court appearance is not in the child's best interest. In such circumstances, the child shall be provided the opportunity to express his or her views to the court by a method deemed appropriate by the court. *772 Further, if counsel is not available at the time of the hearing, counsel shall be appointed as soon as practical thereafter and the court shall set an additional hearing at which time both counsel and the child shall be present.
(11) Hearing on Placement.
(A) At the hearing, the court shall consider, at a minimum, all of the following:
(i) based on an independent assessment of the child, the recommendation of a department representative or authorized agent that the residential treatment or hospitalization is in the child's best interest and a showing that the placement is the least restrictive available alternative;
(ii) the recommendation of the guardian ad litem;
(iii) a case review committee recommendation, if there has been one;
(iv) the written findings of the evaluation and suitability assessment prepared by a qualified evaluator; and
(v) the views regarding placement in residential treatment that the child expresses to the court.
(B) All parties shall be permitted to present evidence and witnesses concerning the suitability of the placement.
(C) If the court determines that the child is not suitable for residential treatment, the court shall order the department to place the child in the least restrictive setting that is best suited to meet the child's needs.

(b) Continuing Residential Placement Reviews.
(1) The court shall conduct a hearing to review the status of the child's residential treatment plan no later than 3 months after the child's admission to the residential treatment program. An independent review of the child's progress toward achieving the goals and objectives of the treatment plan must be completed by a qualified evaluator and submitted to the court and all parties in writing at least 72 hours before the 3-month review hearing.
(2) Review hearings shall be conducted every 3 months thereafter, until the child is placed in a less restrictive setting. At each 3-month review hearing, if the child appears and is not represented by an attorney, the court shall directly inquire of the child whether he or she disagrees with continued placement. If the child does not appear and is not represented by an attorney, the court shall diligently pursue all information available to determine if the child disagrees with continued placement. If the court determines that the child disagrees with the continued placement, the court shall appoint an attorney for the child.
(3) If the court determines at any hearing that the child is not suitable for continued residential treatment, the court shall order the department to place the child in the least restrictive setting that is best suited to meet the child's needs.
(c) Presence of Child. The child shall be present at all court hearings unless the court finds that the child's mental or physical condition is such that a court appearance is not in the child's best interest. In such circumstances, the child shall be provided the opportunity to express his or her views to the court by a method deemed appropriate by the court.
NOTES
[1] The Legislature amended section 39.407(5), Florida Statutes, in 2002. See ch. 2002-219, § 3, Laws of Fla. We have reviewed the amendments to section 39.407(5) and conclude that incorporating a precommitment hearing into rule 8.350 would not be inconsistent with the statutory scheme.
[2] We stress that rule 8.350 does not address the issue of counsel for children in all dependency proceedings.
[3] The majority of these children were between 13 and 16 years of age, with less than 10% under the age of 10 at the time of the commitment. During these years there were no children under the age of 5 in residential treatment.
[4] The proviso to this appropriation contains the following language:

Funds and positions are provided from General Revenue in Specific Appropriation 3201 through 3218 to enable the Guardian Ad Litem programs to provide "best interest representation" of children involved in dependency proceedings. Services shall be provided by Guardian Ad Litem staff, attorneys and trained volunteers using the Osceola County model currently operating in the Ninth Judicial Circuit Attorney Ad Litem Pilot Project.... The chief judges and/or trial court administrator of each judicial circuit may only contract for legal services to assist a Guardian Ad Litem program to provide best interest representation for a child or only under those circumstances when a judge determines it is in the best interests of a child to be represented by an attorney. Guidelines for the appointment of attorneys for children should be developed, including appropriate standards of practice for attorneys who represent children, to implement these appropriations.
Id. at 4613. The statute governing the Ninth Judicial Circuit Attorney Ad Litem Pilot Project provides that "[t]he attorney ad litem's representation shall be limited to proceedings under this chapter only." § 39.4086(2)(f), Fla. Stat. (2002).
[5] §§ 394.451-.4789, Fla. Stat (2002).