BENTON, J.
G.T., a teenager in the custody of the Department of Children and Family Services (DCFS), appeals the circuit court order involuntarily committing him to a residential mental health treatment facility. At an evidentiary hearing conducted in purported conformity with Florida Rule of Juvenile Procedure Rule 8.350, no competent evidence was adduced to show that G.T. had been “diagnosed with a mental, emotional, or behavioral disorder of sufficient duration to meet one of the diagnostic categories specified in the most recent edition of the Diagnostic and Statistical Manual of the American Psychiatric Association.” § 394.492(5), Fla. Stat. (2005). Because DCFS offered nothing but hearsay to prove “an emotional disturbance as defined in s. 394.492(5) or a serious emotional disturbance as defined in s. 394.492(6),” § 39.407(6)(a)(3.), Fla. Stat. (2005), we reverse.
A year after DCFS took custody of G.T. and two months before DCFS filed a motion seeking to place him in an inpatient residential mental health treatment facility, DCFS terminated G.T.’s parents’ parental rights. Before the motion to confine him in the mental health treatment facility was heard, a guardian ad litem and counsel were appointed for G.T. As required by statute,[1] he was “assessed for *1247 suitability for residential treatment by a qualified evaluator who has conducted a personal examination and assessment of the child,” before the motion seeking residential mental health treatment was filed. DCFS attached to its motion a report entitled “Initial Suitability Assessment For Residential Treatment,” attributed to Richard Filippi, a licensed psychologist.[2]
Commitment proceedings under Rule 8.350 of the Florida Rules of Juvenile Procedure are designed to give a reliable answer to the question whether the dependent child proceeded against is suitable for residential mental health treatment:
(4) If the department seeks to place the child in a residential treatment center or hospital, the department shall immediately file a motion for placement of the child with the court. This motion shall include a statement as to why the child is suitable for this placement and why less restrictive alternatives are not appropriate and also shall include the written findings of the qualified evaluator.
[[Image here]]
(11) Hearing on Placement.
[[Image here]]
(B) All parties shall be permitted to present evidence and witnesses concerning the suitability of the placement.
(C) If the court determines that the child is not suitable for residential treatment, the court shall order the department to place the child in the least restrictive setting that is best suited to meet the child’s needs.
Fla. R. Juv. P. 8.350(a)(4), (11) (2005) (emphasis supplied). ‘“Suitable for residential treatment’ or ‘suitability’ ” is defined in section 39.407(6)(a)(3.), Florida Statutes (2005), as a
determination concerning a child or adolescent with an emotional disturbance as defined in s. 394.492(5) or a serious emotional disturbance as defined in s. 394.492(6) that each of the following criteria is met:
a. The child requires residential treatment.
b. The child is in need of a residential treatment program and is expected to benefit from mental health treatment.
c. An appropriate, less restrictive alternative to residential treatment is unavailable.
DCFS has the burden to prove that a dependent child has “an emotional distur *1248 bance as defined in s. 394.492(5)” or “a serious emotional disturbance as defined in s. 394.492(6),” and that the requirements of section 39.407(6)(a)(3.)(a.-c.) are met,[3] by clear and convincing evidence, a burden DCFS acknowledges it bears.[4]
At G.T.’s hearing, DCFS called his case manager, a supervisor at the transitional group home in which G.T. had been residing, and G.T.’s family services counselor. These witnesses testified that G.T. was disrespectful, defiant and verbally aggressive with staff, had stolen “hygiene items” from a supply closet that were for all the children’s use,[5] returned “home” late,[6] kept his room messy, and refused therapy offered in the transitional group home. The DCFS case manager also testified that these behaviors were similar to those G.T. exhibited in his prior placements.[7] The guardian ad litem agreed that G.T. was in need of therapeutic services, and, although she believed G.T. would benefit more from a therapeutic group home than an inpatient program, endorsed the residential treatment recommendation.
Dr. Filippi, author of the suitability assessment report, did not appear at the hearing, but DCFS offered his report into evidence. G.T. objected to its admission on grounds that DCFS had laid no foundation for the report’s admissibility or established who wrote the report or the author’s qualifications, and that the report was hearsay and its admission would constitute a violation of G.T.’s confrontation rights under the state and federal constitutions. Over these objections, the trial court received the report, ruling that, while the report was hearsay, it was nevertheless admissible.
G.T. called three witnesses, including the guidance counselor at his high school and his art teacher. They testified that G.T. was doing well in school at the time of the hearing (although he was in “grade recovery” for two classes from the prior grading period), had no disciplinary problems, no impulse control problems, no problems being disrespectful to teachers, and had made friends with students who were also good student citizens.[8]
Granting DCFS’s motion, the trial court found that G.T. “is a danger to himself and to others and suffers from a severe emotional disturbance,” and directed that G.T. be placed in residential treatment as soon as possible. In ruling that G.T. was emo *1249 tionally disturbed,[9] the trial court seemed to reject G.T.’s argument that the “emotional disturbance” criteria for involuntary commitment of dependent children require a diagnosis by a psychiatrist or psychologist. But the statute provides that the “qualified evaluator” must be “a psychiatrist or a psychologist licensed in Florida,” § 39.407(6)(b), Fla. Stat. (2005), and contemplates expert opinion attesting to a diagnosis that comports with a disorder specified in the Diagnostic and Statistical Manual of Mental Disorders of the American . Psychiatric Association. See § 394.492(5), (6), Fla. Stat. (2005).
DCFS offered no psychiatrist’s or psychologist’s expert opinion testimony that G.T. was “emotionally disturbed” or “seriously emotionally disturbed.” DCFS had to prove one or the other in order to show that G.T. was “suitable” for a mental health treatment placement.[10] Dr. Filip-pi’s report was the only possible basis for any finding that G.T. was “diagnosed with a mental, emotional, or behavioral disorder *1250 of sufficient duration to meet one of the diagnostic categories specified in the most recent edition of the Diagnostic and Statistical Manual.” Along with Dr. Filippi’s own findings (themselves hearsay), the report also contained hearsay statements of others.
Acknowledging that the psychologist’s report was hearsay, the trial court ruled: “Dependency proceedings in Florida and in most sister states commonly involve the court’s consideration of reliable hearsay of this kind without the testimony of the de-clarant.” The learned trial judge’s analysis makes no distinction between, e.g., placing a dependent child with one set of foster parents rather than another, on the one hand, see Fla. R. Juv. P. 8.340(a) (2005),[11] and, on the other, consigning a dependent child who may be doing satisfactorily in school to a mental health treatment facility under section 39.407(6), Florida Statutes (2005), and Florida Rule of Juvenile Procedure 8.350 (2005).
But an important distinction exists. Confinement on account of mental illness, like imprisonment for crime or preventive detention under the Jimmy Ryce Act, entails a serious deprivation of individual liberty. See Kephart v. Hadi, 932 So.2d 1086, 1090 (Fla. June 8, 2006) (“As we said in State v. Goode, 830 So.2d 817, 825-26 (Fla.2002), ‘[cjivil commitment proceedings involve a serious deprivation of liberty and, thus, such proceedings must comply with the due process clauses of the Florida and United States Constitutions.’ We have also recognized that confinement under the Act implicates an individual’s liberty interest in being free from physical restraint. See Westerheide v. State, 831 So.2d 93, 104 (Fla.2002).”); Ibur v. State, 765 So.2d 275, 276 & n. 1 (Fla. 1st DCA 2000) (“Because involuntary commitment is a substantial deprivation of liberty at which fundamental due process protections must attach, the patient cannot be denied the right to be present, to be represented by counsel, and to be heard.”) (citing In re Beverly, 342 So.2d 481, 489 (Fla.1977) (“The seriousness of the deprivation of liberty and the consequences which follow in adjudication of mental illness make imperative strict adherence to the rules of evidence generally applicable to other proceedings in which an individual’s liberty is in jeopardy.”)).
Concerns of this kind may account at least in part for our supreme court’s statement in M.W. v. Davis, 756 So.2d 90, 109 (Fla.2000),[12] that “we cannot eschew the *1251 necessity for a hearing before a dependent child is placed in residential treatment against his ■wishes.” The M.W. court also noted:
Ironically, our rules provide more procedural protections in this situation for children in the custody of the state because they are delinquent than for those children who are in the custody of the state because they have been adjudicated dependent through no fault of their own. Cf. Fla. R. Juv. P. 8.095(a) (providing a procedure to commit a child to the custody of the Department when the child is charged with a delinquent act but is incompetent to proceed with the trial).
756 So.2d at 108 n. 36. See also Amend, to the Rules of Juvenile Proc., Fla. R. Juv. P. 8.350, 804 So.2d 1206, 1212-13 (Fla.2001) (modifying proposed rule so as to mandate a pre-commitment hearing, albeit without considering “potential” constitutional issues [13] that might require such a hearing).
Although the Florida Supreme Court did not say in M.W., 756 So.2d at 106 (discussing need to “provide judicial and other procedures to assure due process through which children ... are assured fair hearings ... and the recognition, protection and enforcement of their constitutional and other legal rights”) (quoting § 39.001(l)(i), Fla. Stat. (Supp.1998)), that an evidentiary hearing was constitutionally required before placing a dependent child in a mental health treatment facility, it provided for nothing less in subsequently adopting Florida Rule of Juvenile Procedure 8.350, which plainly says: “All parties shall be permitted to present evidence and witnesses concerning the suitability of the placement.” Fla. R. Juv. P. 8.350(a)(ll)(B) (2005).
As DCFS points out, the trial court is also required to “consider” “[a]t the hearing” “the written findings of the evaluation and suitability assessment prepared by a qualified evaluator” prior to placement of a child in a residential treatment facility.[14] But this directive does not by implication strip out of the Rule the provisions expressly granting the right to an evidentia-ry hearing. See Mitchell v. State, 911 *1252 So.2d 1211, 1214 (Fla.2005) (“‘The same principles of construction apply to court rules as apply to statutes.’ Gervais v. City of Melbourne, 890 So.2d 412, 414 (Fla. 5th DCA 2004) (citing Rowe v. State, 394 So.2d 1059 (Fla. 1st DCA 1981)).”); Young v. Progressive Se. Ins. Co., 753 So.2d 80, 84 (Fla.2000) (“Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another.”) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)). Rule 8.350 contemplates an evidentiary hearing for resolution of all material facts in dispute.
Even when hearsay can be considered over objection, hearsay (outside of the recognized exceptions to the rule excluding hearsay) is not deemed competent, substantial evidence sufficient to support a factual finding. See, e.g., Stewart v. State, 926 So.2d 413, 414 (Fla. 1st DCA 2006) (“Although hearsay evidence is admissible at the revocation hearing, the defendant’s probation or community control cannot be revoked solely on the basis of hearsay. Knight v. State, 801 So.2d 160 (Fla. 2d DCA 2001).”) (citation omitted); Merritt v. Crosby, 893 So.2d 598, 599 (Fla. 1st DCA 2005) (“The sole evidence to support the Commission’s finding of guilt consisted of the deputy’s recitation of [appellant’s girl-friendj’s hearsay statement, but hearsay alone is not sufficient to sustain the revocation of parole.”); Strickland v. Fla. A & M Univ., 799 So.2d 276, 279 (Fla. 1st DCA 2001) (“[Ajlthough hearsay is admissible in administrative proceedings, determinations of the Administrative Law Judge may not be based on hearsay alone.”). Cf. also Glover v. State, 871 So.2d 1025, 1025 (Fla. 1st DCA 2004) (“Because the state relied solely on hearsay evidence regarding Appellant’s release date from prison, it failed to prove an essential requirement for sentencing pursuant to the PRR Act.”); Sinclair v. State, 853 So.2d 551, 552 (Fla. 1st DCA 2003) (reversing a prison releasee reoffender sentence and remanding where the State relied solely on hearsay to establish the defendant’s prison release date). We do not hold that only the author of the statutorily required report is competent to testify. We reject the argument that all expert testimony must come from the author of the initial suitability assessment for residential treatment. DCFS can call any suitable expert to prove its case.
But it called none here. While DCFS argues that “[tjhe lower court in the instant case was provided [much] evidence of the subject’s uncooperative, disruptive and destructive behaviors,” DCFS does not argue that anything aside from Dr. Filippi’s written report established that G.T. suffered from a diagnosed mental or emotional disorder. See Parham v. J.R., 442 U.S. 584, 609, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (“[Tjhe determination of whether [a person] is mentally ill turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists.”) (quotation marks and citation omitted); Addington v. Texas, 441 U.S. 418, 430, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (“Psychiatric diagnosis ... is to a large extent based on medical ‘impressions’ drawn from subjective analysis and filtered through the experience of the diagnostician.”).
We reject DCFS’s contention that it may prove a child’s suitability for residential mental health treatment with a hearsay report like Dr. Filippi’s. The report was not competent evidence, and the trial court erred in basing findings of disputed fact on the report. In order to rely in an evidentiary hearing under Rule 8.350 on a mental health professional’s findings or expert opinion to establish the basis for placing a dependent child in a residential *1253 mental health treatment facility, DCFS must call the mental health professional as a witness, and the mental health professional must be subject to cross-examination both as to qualifications as an expert and as to any opinions offered as an expert.
Because the only basis for the finding that G.T. was “diagnosed with a mental, emotional, or behavioral disorder” was hearsay, the trial court’s finding that G.T. is “suitable for residential treatment” and thus that he is “a child or adolescent with an emotional disturbance ... or a serious emotional disturbance,” § 39.407(6)(a)(3.), Fla. Stat. (2005), lacks any support in competent evidence adduced at the evidentiary hearing.
Reversed.
ERVIN and BROWNING, JJ., concur.

. Section 39.407(6), Florida Statutes, provides:
*1247 (c) Before a child is admitted under this subsection, the child shall be assessed for suitability for residential treatment by a qualified evaluator who has conducted a personal examination and assessment of the child and has made written findings that:
1. The child appears to have an emotional disturbance serious enough to require residential treatment and is reasonably likely to benefit from the treatment.
2. The child has been provided with a clinically appropriate explanation of the nature and purpose of the treatment.
3. All available modalities of treatment less restrictive than residential treatment have been considered, and a less restrictive alternative that would offer comparable benefits to the child is unavailable.
§ 39.407(6)(c), Fla. Stat. (2005).

. The report stated that G.T. suffers from bipolar disorder, posttraumatic stress disorder, and oppositional defiant disorder, and that G.T. suffers from an "emotional disturbance serious enough to require residential care"; that residential treatment is recommended because G.T. requires the structure and intense therapy of inpatient therapy, has not responded to outpatient therapy, and is reasonably likely to benefit from the intensive therapy; and that G.T. “was provided with a clinically appropriate explanation of the nature and purpose of treatment,” but that G.T. was "unable to verbalize an understanding of his need for treatment as he denied or offered explanations for the reported disruptive behavior and failed placements.”

. See also the additional criteria listed in section 39.407(6)(c), Florida Statutes (2005), set out ante note 1.

. See In re J.W., 890 So.2d 337, 339, 340 (Fla. 2d DCA 2004) (noting that "neither the statute nor the rule address the burden of proof,” but holding that "the proper standard of proof in proceedings for the involuntary commitment of a dependent child to a residential mental health treatment facility is clear and convincing evidence”).

. On cross-examination, the witness acknowledged that she had no personal knowledge of a theft.

. The witness conceded that she had allowed G.T. to stay late at school for drama club activities, that G.T. was allowed to come back late if he made prior arrangements with staff, and that she only worked until 4:30 p.m. and was not there when G.T. returned on afternoons he had made arrangements to come back late.

. Between February and November 2005, G.T. had been in two foster homes, one group home, and the transitional group home in which he resided at the time of the hearing, which was intended as a temporary placement.

. G.T. also called a transitional group home vice-president, who testified that the therapy G.T. had refused consisted of medication management and crisis services, and did not include therapeutic psychological services.

. This ruling necessarily amounts to a finding that G.T. met the criteria set out in section 394.492(5) or (6), Florida Statutes (2005). The order’s use of the phrase "severe emotional disturbance” suggests an intent to find a “serious emotional disturbance.” See generally Plummer v. State, 935 So.2d 35 (Fla. 1st DCA 2006). A child or adolescent who is seriously emotionally disturbed is statutorily defined, as follows:
"Child or adolescent who has a serious emotional disturbance or mental illness” means a person under 18 years of age who: (a) Is diagnosed as having a mental, emotional, or behavioral disorder that meets one of the diagnostic categories specified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association; and
(b) Exhibits behaviors that substantially interfere with or limit his or her role or ability to function in the family, school, or community, which behaviors are not considered to be a temporary response to a stressful situation.
The term includes a child or adolescent who meets the criteria for involuntary placement under s. 394.467(1).
§ 394.492(6), Fla. Stat. (2005). Section 394.467(1) provides that "[a] person may be placed in involuntary inpatient placement for treatment upon a finding of the court by clear and convincing evidence that” "[tjhere is substantial likelihood that in the near future he or she will inflict serious bodily harm on himself ... or another person, as evidenced by recent behavior causing, attempting, or threatening such harm[.]” § 394.467(l)(a)(2.)(b.), Fla. Stat. (2005).

. DCFS argues that the trial court needed to find only that appellant had an "emotional disturbance,” rather than the "severe emotional disturbance” the trial court in fact found, and that the trial court did not, therefore, need to find that appellant was, "dangerous.” Section 39.407(6)(a)(3.) requires that the court determine either that the dependent child has a "serious emotional disturbance,” or that the child has "an emotional disturbance as defined in s. 394.492(5)”:
[A] determination concerning a child or adolescent with an emotional disturbance as defined in s. 394.492(5) or a serious emotional disturbance as defined in s. 394.492(6) that each of the following criteria is met....
§ 39.407(6)(a)(3.), Fla. Stat. (2005) (emphasis supplied). Section 394.492(5), unlike subsection (6)> provides that "[t]he term [‘emotional disturbance’] does not include ,a child or adolescent who meets the criteria for involuntary placement under s. 394.467(1),” § 394.492(5), Fla. Stat. (2005) (emphasis supplied), and does not, therefore, just as DCFS argues, require a finding of dangerousness.
But section 394.492(5) also defines a child with an "emotional disturbance” (rather than a "serious emotional disturbance”) as one who is diagnosed with a mental, emotional, or behavioral disorder of sufficient duration to meet one of the diagnostic categories specified in the most recent edition of the Diagnostic and Statistical Manual of the American Psychiatric Association.... The emotional disturbance must not be considered to be a .temporary response to a stressful situation. § 394.492(5), Fla. Stat. (2005). Under either subsection, a mental health professional competent to do so must make the requisite diagnosis.

. No statute or rule provides that an evaluator's report (while it must be "considered” by the court, even if hearsay) constitutes competent evidence on which the court may resolve conflicting factual contentions in deciding for or against placing a dependent child in a mental health treatment facility. This is in noteworthy contrast to disposition hearings under Rule 8.340. See Fla. R. Juv. P. 8.340(a) (2005) ("Information Available to Court. At the disposition hearing the court ... may receive any relevant and material evidence helpful in determining the proper disposition to be made. It shall include written reports required by law, and may include ... any psychiatric or psychological evaluations of the child ... that are relevant and material. Such evidence may be received by the court and may be relied upon to the extent of its probative value, even though not competent in an adjudicatory hearing.”).

. In M.W. v. Davis, 756 So.2d 90, 92 (Fla.2000), the court held that the hearing requirements .in the Baker Act did not apply to dependent children facing confinement in locked mental health treatment facilities, when DCFS elected not to proceed under the Baker Act. Section 39.407(6), Florida Statutes (2005), still reads:
Children who are in the legal custody of the department may be placed by the department, without prior approval of the court, in a residential treatment center licensed under s. 394.875 or a hospital licensed under chapter 395 for residential mental health treatment only pursuant to this sec *1251 tion or may be placed by the court in accordance with an order of involuntary examination or involuntary placement entered pursuant to [the Baker Act] s. 394.463 or s. 394.467. All children placed in a residential treatment program under this subsection must have a guardian ad litem appointed.
(Emphasis supplied.) Since the court adopted Florida Rule of Juvenile Procedure 8.350, however, the Rule has superseded the statutory language "without prior approval of the court" and mandates an evidentiary hearing in circuit court before confinement. See generally Baxstrom v. Herold, 383 U.S. 107, 110-15, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

. See, e.g., Pullen v. State, 802 So.2d 1113, 1119 (Fla.2001) (holding Anders procedure for withdrawal of counsel in criminal proceedings should apply to involuntary civil commitments under the Baker Act); Shuman v. State, 358 So.2d 1333, 1335 (Fla.1978) (stating that "[tjhose whom the state seeks to involuntarily commit to a mental institution are entitled to the protection of our Constitutions, as are those incarcerated in our correctional institutions,” and holding that indigents involuntarily committed are entitled to an appellate record of the commitment proceedings at public expense); Ibur v. State, 765 So.2d 275, 276 (Fla. 1st DCA 2000) (holding appellant had a due process right to testify at hearing for involuntary commitment because involuntary committees have the right to be present, represented by counsel, and heard).

. Fla. R. Juv. P. 8.350(a)(ll)(A)(iv) (2005). We reject any suggestion that the written report should not (absent stipulation) be available even for the court's background “consideration,” unless authenticated at the evidentiary hearing and unless its author testifies at the hearing, as undermining the Rule's directive that the report be considered at the hearing.