# Third District Court of Appeal
## State of Florida

Opinion filed June 12, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0811
Lower Tribunal No. 22-6148
_____

**Orlando G. Silva,**
Appellant,

vs.

**Jorge E. Silva,**
Appellee.

An appeal from non-final orders from the Circuit Court for Miami-Dade County, Yvonne Colodny, Judge.

Thomas-McDonald Law Firm, P.A., and Aislynn Thomas-McDonald, for appellant.

Silva & Silva, P.A., and Paul Jon Layne, for appellee.

Before LOGUE, C.J., and EMAS, and MILLER, JJ.

MILLER, J.

In this contentious intrafamily dispute, appellant, Dr. Orlando G. Silva, challenges orders determining limited incapacity and appointing his son, Jorge E. Silva, a Florida-barred attorney, to serve as his guardian. We commend the trial judge on her prudent handling of this difficult case and impute no error to the orders under review, save the breadth of the rights removed.

## BACKGROUND

After his wife tragically died, Dr. Silva raised his children, two of whom now share a successful law firm, while maintaining an oncology practice. In late 2016, he executed a Declaration of Preneed Guardian, with the assistance of counsel, naming his son, Jorge, as his plenary guardian. The Declaration provided, in relevant part:

> If I am at any time determined to be an incapacitated person, as that term is defined in the Florida Guardianship Law as it now exists or may hereafter be amended, I declare that my son, Jorge Silva . . . is to serve as Plenary Guardian of my Person and Property, to exercise all delegable legal rights and powers and to perform all tasks necessary to care for me and my property or estate.
> I further declare that it is my intent and desire that the above-named person[] be appointed by the Court having jurisdiction to serve without bond.

Dr. Silva stopped practicing medicine due to an underlying health condition, but he assisted his sons regularly in their law office.

2

Dr. Silva's children soon learned that he was experiencing financial distress, including a foreclosure and an automobile repossession. Because he had enjoyed a lucrative career and collected substantial sums from a settlement and certain real estate transactions, Dr. Silva's sons suspected his long-term intimate partner was draining his bank accounts and otherwise dissipating his resources.

Although his children offered to assist him, Dr. Silva took up residence with his sister and began sleeping on a couch in her efficiency apartment. He failed to attend to his personal hygiene and healthcare needs, exacerbating a chronic serious health condition, and he amassed a series of unpaid traffic citations, culminating in a license suspension.

In October of 2022, Dr. Silva's sons, Jorge and Carlos, petitioned the court for the issuance of emergency temporary guardianship letters. Appended to the petition were medical records detailing Dr. Silva's deteriorating health, along with a medical letter signed by his primary care physician of nearly forty years, Dr. Julio Pita, opining that Dr. Silva could no longer care for himself.

On November 3, 2022, the court issued letters of emergency temporary guardianship and appointed Jorge to serve as the emergency temporary guardian. The court also appointed a three-member examining

committee and set a hearing for a capacity determination for mid-December. See § 744.331(3), Fla. Stat. (2023).

Two of the three committee members examined Dr. Silva and concluded a limited guardianship was appropriate due to evident neurological impairment and limited functional capacity. Dr. Silva refused, however, at that time, to submit to an evaluation by the third committee member, Dr. Ralph Richardson, a forensic psychologist.

At the request of the parties, the December hearing was continued until mid-January. In the interim, Dr. Richardson examined Dr. Silva. Dr. Richardson agreed a limited guardianship was proper, but his opinion regarding the proper scope of the rights to be removed was considerably narrower than that of the first two examiners.

On January 12, 2023, the trial court convened the capacity determination hearing. At that time, Dr. Silva's attorney stipulated on the record to a limited capacity determination but requested an evidentiary hearing as to the selection of permanent guardian and the extent of the rights to be removed.

The court entered an order finding by clear and convincing evidence that Dr. Silva was partially incapacitated. As a result, the court ordered that the temporary emergency guardianship letters should remain in full force and

4

effect and a limited guardian was warranted. The court set a further hearing to address less restrictive rights removal alternatives and the selection of the guardian.

The parties proceeded to a two-day evidentiary hearing. During the hearing, Dr. Silva produced a newly executed Declaration of Preneed Guardian, dated February 8, 2023, revoking his prior designation of Jorge and naming Elena George, a professional guardian, as guardian. He then attested he destroyed his original declaration. After several witnesses provided impeachment testimony, Dr. Silva admitted he did not destroy the original declaration.

Notwithstanding a timely hearsay objection, the reports of the first two examining committee members were admitted into evidence without expert testimony or any proffered hearsay exception. At the conclusion of the hearing, the trial court entered two orders. The first reiterated the limited capacity finding and removed a myriad of rights. The second order named Jorge as limited guardian. This appeal ensued.

## ANALYSIS

Resolution of this appeal requires an examination of several discrete sources of law. The first is Florida Rule of Appellate Procedure 9.170(b)(8), which states that an order determining incapacity in a guardianship case is

final for purposes of appeal. The second is section 744.3045(4), Florida Statutes (2023), Florida's preneed guardian statute, which provides a rebuttable presumption in favor of the selection of a designated preneed guardian. The third is Florida Probate Rule 5.170, which renders the Florida Rules of Evidence generally applicable in guardianship proceedings. We examine each, in turn.

## I.    The Limited Capacity Determination

The first issue on appeal concerns the limited capacity determination. Bearing the title "Appeal Proceedings in Probate and Guardianship Cases," Florida Rule of Appellate Procedure 9.170 provides a list of final appealable orders in probate and guardianship proceedings. Among those enumerated are "[o]rders that finally determine a right or obligation," including orders that "determine a petition or motion to determine incapacity or to remove rights of an alleged incapacitated person or ward." Fla. R. App. P. 9.170(b)(8).

Here, the trial court found limited capacity and rendered a written order to this effect as far back as mid-January. Dr. Silva did not appeal that ruling. It is well-settled that "repeating the same ruling in [a] later order . . . cannot revive an appeal period." Campos v. Campos, 230 So. 3d 553, 555 (Fla. 1st DCA 2017). Consequently, we lack jurisdiction to revisit the propriety of the capacity determination and dismiss that portion of the appeal.

6

## II.     The Guardian Appointment

We must next examine the choice of guardian.  It is axiomatic that the trial court enjoys broad discretion in selecting a guardian.  See Waldon v. Waldon, 305 So. 3d 634, 637 (Fla. 3d DCA 2020).  In cases involving the designation of a preneed guardian, however, this discretion is tethered to an established standard.  See Miller v. Goodell, 958 So. 2d 952, 954 (Fla. 4th DCA 2007).  "Where a ward's preference as to the appointment of a guardian is capable of being known, that intent is the polestar to guide probate judges in the appointment of their guardians." Est. of Salley v. Comprehensive Pers. Care Servs., Inc., 742 So. 2d 268, 271 (Fla. 3d DCA 1997).

This principle is codified in section 744.3045, Florida Statutes, the preneed guardian statute.  The statute allows a competent adult to name a preneed guardian by executing a written declaration.  See § 744.3045(1), Fla. Stat.  Once the declaration is executed, the statute creates a rebuttable presumption that the named guardian is entitled to serve in that capacity. See § 744.3045(4), Fla. Stat.  But "[t]he court shall not be bound to appoint the preneed guardian if the preneed guardian is found to be unqualified to serve as guardian."  Id.; see also Acuna v. Dresner, 41 So. 3d 997, 999 (Fla. 3d DCA 2010); Est. of Salley, 742 So. 2d at 271 ("A ward's nominee, of course, may be rejected when unfit or unsuitable, or for other like reasons.");

7

Davis v. King, 686 So. 2d 763, 765 (Fla. 5th DCA 1997) (holding designated preneed guardian unqualified to serve where conflict of interest exists).

Interestingly, the statute is self-executing. Upon a finding of incapacity, "[t]he preneed guardian shall assume the duties of guardian immediately." § 744.3045(5), Fla. Stat.

Here, Dr. Silva executed a declaration naming Jorge as his preneed guardian. Although he produced a second declaration at trial, that document post-dated the trial court's limited capacity determination. Thus, by the time Dr. Silva signed the document, he was no longer "[a] competent adult." § 744.3045(1), Fla. Stat. This rendered the second declaration, at best, a "post need" designation and therefore outside the ambit of the preneed guardian statute.

Further, guardianship proceedings are, by their very nature, intrusive and, as in this case, oftentimes initiated against the wishes of the ward. While there was testimony in favor of appointing a professional guardian, competing testimony demonstrated that Jorge was uniquely suited to serve his father's best interests. In determining whether a ruling is supported, we assess the record evidence for sufficiency, only, not weight. The trial court must be trusted to exercise sound judgment in resolving credibility issues. See Porter v. State, 788 So. 2d 917, 923 (Fla. 2001) (observing "the trial

8

court's superior vantage point in assessing the credibility of witnesses and in making findings of fact"); see also Meyers v. Meyers, 295 So. 3d 1207, 1213 (Fla. 2d DCA 2020) ("The credibility of witnesses is within the trial court's exclusive purview."). The competing testimony compels us to affirm the appointment of guardian.

### III. The Breadth of the Removed Rights

Lastly, Dr. Silva argues that the trial court erroneously relied upon the hearsay reports of the examining committee in determining the breadth of rights warranting removal.[1] Adopting the reasoning embraced by our sister court in Shen v. Parkes, 100 So. 3d 1189 (Fla. 4th DCA 2012), we agree.

In Shen, the Fourth District Court of Appeal was tasked with determining whether the trial court erred in accepting and approving a general magistrate's recommendation that limited capacity was established. See id. at 1189. Shen had contested the adjudicatory hearing and objected to the hearsay nature of the examining committee members' reports. See id. at 1190. The court overruled the objection and admitted the reports. See id. None of the examiners testified. See id.

---

[1] Florida Rule of Appellate Procedure 9.170(b)(8) allows for the review of a determination removing "rights of an alleged incapacitated person or ward."

9

Recognizing the deferential standard afforded to the trial court, the appellate court nonetheless reversed. See id. at 1191–92. In doing so, the court noted that, unless otherwise specified under the Florida Probate Code, Florida Probate Rule 5.170 renders the Florida Rules of Evidence applicable in guardianship proceedings. See id. Because the examiners did not testify and no evidentiary exception was proffered, admission of the reports violated the prohibition against hearsay. See id.

The reasoning in Shen is consistent with other reported decisions from around the state. See Scaringe v. Herrick, 711 So. 2d 204, 204–05 (Fla. 2d DCA 1998) ("The act of filing [a] report [with the court] does not place the report in evidence. Hearsay rules contained in the Florida Evidence Code apply . . . ."); G.T. v. Dep't of Child. & Fam. Servs., 935 So. 2d 1245, 1252 (Fla. 1st DCA 2006) (finding trial court erroneously admitted report into evidence and relied on it when report was inadmissible hearsay subject to Florida Rules of Evidence). The facts in this case are on all fours with this line of authority. Because the reports violated the prohibition against hearsay, they could not be used to demonstrate that Dr. Silva "lacked the capacity to perform the functions referred to in the order" removing rights. LeWinter v. Guardianship of LeWinter, 606 So. 2d 387, 388 (Fla. 3d DCA

1992).  Thus, we are constrained to reverse that aspect of the order under review.

Dismissed in part, affirmed in part, reversed in part, and remanded.